# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| STATE OF TENNESSEE,<br><br>      Respondent/Appellant,<br><br>VS.<br><br>WILLIAM COX,<br><br>      Defendant,<br><br>A. C. GILLESS, SHERIFF OF<br>SHELBY COUNTY,<br><br>      Petitioner/Appellee. | ) <br> ) <br> )  Shelby Criminal No. P-19587<br> ) <br> )  Appeal No. 02A01-9806-CR-00154<br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**FILED**

**May 10, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

APPEAL FROM THE CRIMINAL COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE W. FRED AXLEY, JUDGE

**PAUL G. SUMMERS**
**Attorney General & Reporter**
**MARK A. HUDSON**
**Senior Counsel**
Nashville, Tennessee
Attorneys for Appellant

**LENARD HACKEL**
Memphis, Tennessee
Attorney for Appellee

**REVERSED, VACATED & REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**
      The State of Tennessee ("the State") appeals from an order of the Shelby County

Criminal Court that ordered the State "to reimburse the emergency hospitalization and medical treatment" of numerous criminal defendants based upon Tennessee Code Annotated section 41-4-115(b). Based upon the following, we reverse and vacate the lower court's order and remand for further proceedings consistent with this opinion.

**Facts and Procedural History**

On February 19, 1998, A.C. Gillis, Sheriff of Shelby County, filed a "petition to show cause" against the State in each of Shelby County's ten criminal court divisions. Each petition essentially asserted the same factual allegations and sought the same relief, except that each petition related to hospital bills for only those criminal defendants whose cases had been commenced within the criminal court division in which the petition was filed. On March 5, 1998, the Shelby County Sheriff filed an "amended petition to show cause" in division 6, which, again, asserted the same factual allegations and sought the same relief, except that it related to additional hospital bills that were not the subject of prior petitions. On March 16, 1998, each petition to show cause was consolidated into the one case that is now on appeal before this Court.

The petitions alleged that each of the named criminal defendants was incarcerated in the Shelby County Jail and/or the Shelby County Correctional Center, and was hospitalized and received medical treatment at The Med. Prior to the filing of these petitions to show cause, prior petitions had been filed by the Shelby County Sheriff as to hospital bills for each subject criminal defendant (and as to numerous other hospital bills which are *not* the subject of this case) to have the criminal courts certify each hospital bill of costs as proven. The criminal courts certified these hospital bills of costs as proven and forwarded such certified bills of costs to the judicial cost accountant. Thereafter, however, numerous bills of costs were disallowed after being audited by the judicial cost accountant.

The Shelby County Sheriff's petitions to show cause alleged that the State had not

2

paid the subject bills of costs. The petitions to show cause further alleged that the subject bills of costs were disallowed for varying reasons, including "not a state prisoner," "not an emergency," the medical treatment was "out-patient," and/or "denied - ins. docs."[1]  The Sheriff contends that the subject hospitalization and medical treatment expenses should have been paid by the State, and his petitions, therefore, prayed that a show cause order be issued to the State instructing it to show cause as to why these bills of costs had not been paid.

On April 3, 1998, the matter was "heard on the written petition[s] . . . and upon statements made in open Court by counsels . . . ."  Thereafter, on April 29, 1998, the criminal court entered an order that contained, among other things, findings of fact and conclusions of law.  The brief findings of fact simply related to the prior procedural history described above.  The conclusions of law included among other things, a finding that the State may not disallow any part of previously certified bills of costs taxed against the state. But see Tenn. Code Ann. §§ 40-25-137(a), 41- 4-115(b) (1997).  Moreover, the criminal court found "that the State is responsible for the hospitalization expenses of all 'state prisoners' and that the definition of 'state prisoners' includes prisoners who have been indicted and are being held at the Shelby County Jail pending trial for a state felony."

Thereafter, the State appealed.  On appeal, the State presents this Court with the following two issues:  (1) whether the judicial cost accountant (the State) is authorized to disallow costs taxed to the State even though the criminal court previously certified the costs as proven; and (2) whether the criminal court erred in ordering the State to pay for the emergency hospitalization and medical treatment of prisoners who were not convicted felons at the time the costs were incurred.  The State argues that the term "state prisoner," as contemplated by Tenn. Code Ann. § 41-4-115(b), is limited to prisoners who have already been convicted of a felony.

---

1. Many costs listed in the original petitions to show cause were simply listed as "denied" without further explanation. Based upon a comparison with the "amended petition to show cause," it appears likely that these denials were also based upon "insurance documents."  No further explanation is provided, however, as to these denials.

**Analysis**

Tennessee Code Annotated section 41-4-115, which is titled "Medical care of prisoners," provides, in part, the following:

> (a) The county legislative bodies alone have the power, and it is their duty, to provide medical attendance upon all prisoners confined in the jail of their respective counties. . . . .
> (b) The state shall be liable for expenses incurred from emergency hospitalization and medical treatment rendered to any state prisoner incarcerated in a county jail or workhouse, provided such prisoner is admitted to the hospital. The sheriff of the county in which such state prisoner is incarcerated shall file a petition with the criminal court committing such state prisoner to the county jail or workhouse attaching thereto a copy of the hospital bills of costs for such state prisoner. It is the duty of the court committing such state prisoner to the county jail or workhouse to examine bills of costs, and if the costs are proved, the court shall certify the fact thereon and forward a copy to the judicial cost accountant. The expenses for such emergency hospitalization and/or medical treatment shall be paid in the same manner as court costs. . . . .

Tenn. Code Ann. § 41-4-115(b) (1997). In this case, Shelby County provided medical attendance to numerous prisoners as required by subsection (a). As explained earlier, the hospital bills of costs for each subject criminal defendant were certified by the criminal court and forwarded to the judicial cost accountant as set forth by subsection (b). Subsection (b) further establishes, however, that these expenses were to be paid "in the same manner as court costs." As such, the judicial cost accountant was then required to audit the hospital bills of cost, *notwithstanding* their antecedent certification for payment by the criminal court. Tenn. Code Ann. §§ 40-25-137(a), 41-4-115(b) (1997). See also Reagan v. Fentress County, 169 Tenn. 103, 83 S.W.2d 244, 246 (1935); Musgroves v. Hamilton County, 111 Tenn. 1, 77 S.W. 779 (1903). This judicial cost accountant has the authority and affirmative duty "to examine into, inspect and audit all bills of costs accruing against the state . . . ; and disallow any part of such bills of costs that may be illegally or wrongfully taxed against the state . . . ." Tenn. Code Ann. §§ 40-25-137(a), 41-4-115(b). In this case, only those hospital bills of cost that satisfied section 41-4-115(b)'s confines were properly allowable, and any costs that exceeded the scope of section 41-4-115(b) were required to be disallowed, despite any antecedent certification by the criminal court. Cf. Reagan, 83 S.W.2d at 246.

In this appeal, the Shelby County Sheriff argues that the criminal court's original certification of the hopital bills of cost amounted to a final adjudication as to the amount of costs for which the State is liable. We disagree. Neither Shelby County nor the Shelby County Sheriff can avoid the judicial cost accountant's audit by a premature action of debt, and neither can have any valid claim for costs against the State until the judicial cost accountant has audited the bills as required by statute. Cf. Reagan, 83 S.W.2d at 246, 247. Having concluded that the judicial cost accountant (the State) is authorized to disallow costs taxed to the State even though the criminal court previously certified the costs as proven, we turn our analysis to whether the criminal court otherwise erred in ordering the State to pay all bills of cost under the authority of Tennessee Code Annotated section 41-4-115(b).

As we noted at the beginning of our analysis, section 41-4-115(a) provides an affirmative duty upon each county to provide medical attendance upon all prisoners confined in its jails. The first sentence of section 41-4-115(b), however, establishes,

> The state shall be liable for expenses incurred from emergency hospitalization and medical treatment rendered to any state prisoner incarcerated in a county jail or workhouse, provided such prisoner is admitted to the hospital.

Tenn. Code Ann. § 41-4-115(b). As we explained earlier, the Sheriff's petitions to show cause indicate that the State disallowed the subject bills of costs for varying reasons, including, among others, "not a state prisoner." Even though the criminal court ordered the State to pay the bills of costs relating to *all* subject criminal defendants, the *only* issue brought before this Court as to the State's liability is limited to this "not a state prisoner" basis for disallowance. But see Tenn. Op. Att'y Gen. No. 89-133 (1989) ("T.C.A. § 41-4-115(b) establishes two classes of inmates in county jails: (1) state prisoners who require emergency hospitalization; and (2) all other prisoners," and the State is only liable for hospital and medical expenses incurred as a result of emergency hospitalization); Tenn. Op. Att'y Gen. No. 78-178A (1978) (under section 41-4-115(b), "no liability would exist for out-patient care of any State prisoner"). In this appeal, the State has not asserted any additional error on the part of the criminal court by contesting its liability on any other basis. Therefore, we limit our review of the scope of section 41-4-115(b)'s first sentence to the

5

definition of "state prisoner," and express no further opinion or judgment as to this provision's scope.

The State's brief succinctly summarizes this "not a state prisoner" argument by stating the following:

> The primary issue in this case is defining "state prisoner." The Shelby County Criminal Court identifies a "state prisoner" as a person who has at least been indicted and held in jail on a state felony charge. The State contends that a "state prisoner" is a person who has been convicted of a felony.

If the term "state prisoner," as used in section 41-4-115(b), includes prisoners who have merely been indicted on a felony charge and are being held in a county jail pending trial, the State would "be liable for expenses incurred from emergency hospitalization and medical treatment rendered" to such persons (provided such persons were "admitted to the hospital"). If the term "state prisoner" is limited to persons who are imprisoned from a felony conviction, then the State would not be liable for such expenses that were incurred prior to conviction.

The construction of a statute is a question of law which appellate courts review *de novo*, with no presumption of correctness. Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998) (citing Myint v. Allstate Ins. Co., 970 S.W.2d 920 (Tenn.1998)). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Worley v. Weigels, Inc., 919 S.W.2d 589, 593 (Tenn. 1996) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995); State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993)). See also Parks v. Tennessee Municipal League Risk Management Pool, 974 S.W.2d 677, 679 (Tenn. 1998). Accordingly, courts "must examine the language of a statute and, if unambiguous, apply its ordinary and plain meaning." Parks, 974 S.W.2d at 679 (citing Riggs v. Burson, 941 S.W.2d 44, 54 (Tenn. 1997)). "If the language is ambiguous, the Court must look to the statutory scheme as a whole, as well as legislative history, to discern its meaning." Parks, 974 S.W.2d at 679 (citing Owens, 908 S.W.2d at 926).

6

Upon review of section 41-4-115(b), we find the term "state prisoner" to be ambiguous. We are unable to ascertain from the statute alone whether the term "state prisoner" encompasses only prisoners who have been convicted by an offense punishable by death or confinement in the state penitentiary, or whether the term encompasses prisoners who have merely been indicted on a felony charge and are being held in a county jail pending trial. Moreover, the statutory scheme, as a whole, provides no clear meaning. Cf. Tenn. Code Ann. §§ 41-2-119(a), 41-4-139(a), 41-8-103(11), 41-8-106 with id. § 41-8-103(6). However, the legislative history on section 41-4-115(b) provides us with guidance as to the intended meaning of "state prisoner," as used in section 41-4-115(b). The sponsor of the original subject bill in the House of Representatives, Representative Buck, explained,

> The problem we've had is our counties are keeping these prisoners -- *they should be or could be in a state penitentiary* in Nashville, but because of the overcrowded conditions, the counties are willing to keep them.

Similarly, the bill's sponsor in the Senate, Senator Neil, explained,

> Because of the overcrowded conditions in the penitentiary, the state is asking the counties to take more and more of these prisoners, and I don't think it's fair and equitable for the county, who only gets eight dollars a day, . . . to have to bear the expense of the hospitalization.

As reflected by the above quotations, the limited discussion on this bill in both legislative bodies pertained solely to prisoners who were already subject to confinement in the state penitentiary. Therefore, we find that section 41-4-115(b), as enacted, was intended to establish state liability for qualifying medical expenses rendered to prisoners who were already convicted of an offense punishable by death or confinement in the state penitentiary. Accordingly, the term "state prisoners" excludes persons who have only been indicted and are incarcerated pending trial on a felony charge.

At this point, we find it necessary to note that no proof exists within the record establishing which (if any) hospital bills of costs were incurred for criminal defendants who had been indicted and were being held at the Shelby County Jail pending trial for a state felony. Moreover, the criminal court did not enter any express finding of fact establishing which (if any) such costs were incurred for criminal defendants who had been indicted and were being held at the Shelby County Jail pending trial for a state felony. This lack of proof

7

stems from the fact that no evidentiary hearing was held, as the criminal court based its order on the mere fact that it had previously certified the bills of cost, which, as we have discussed above, was improper. If the criminal court had been correct in concluding that the term "state prisoners" includes persons who have been indicted and are incarcerated pending trial on a felony charge, then no proof concerning this issue would have been necessary, as it would not have changed the court's ultimate disposition, *i.e.* no reversible error would have resulted. Since, however, the criminal court erred in finding that the term "state prisoner" included such persons, we find it necessary to remand this matter to the criminal court for a determination of which criminal defendants were "state prisoners."

## Conclusion

Based upon the foregoing, we reverse and vacate the lower court's order, and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed against A.C. Gilless, Sheriff of Shelby County, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.