Williams *v.* Taxing District.

A. S. WILLIAMS *v.* TAXING DISTRICT.

TAXING DISTRICT. *Failure to repair streets. Injury to property.* The Taxing District of Shelby county is not liable in damages to a person whose property is injured by a failure to keep the streets in repair.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county.    J. O. PIERCE, J.

YOUNG & MARTIN for Williams.

S. P. WALKER for Taxing District.

COOPER, J., delivered the opinion of the court.

Action to recover damages for an injury to the plaintiff's horse and wagon by reason of a defect in a bridge upon a public street within the Taxing District of Shelby county, commonly known as the city of Memphis. The Taxing District demurred to the declaration, and the demurrer was sustained by the court. The plaintiff appealed, and the Referees report that the judgment should be reversed. The defendant excepts, so as to open the questions raised by the demurrer.

The declaration alleges that the Taxing District is a municipal corporation, having imposed upon it the duty of repair and keeping in repair streets, alleys and bridges within the Taxing District, ample taxes for the purpose being levied by the act of the Leg-

islature, and placed in the control of the said Taxing District. The cause of the injury complained of is averred to be the wrongful neglect and failure of the corporation to repair the bridge where the accident happened, these facts being admitted by the demurrer. The Taxing District relies upon a statute exempting it from liability in the case presented, and the plaintiff insists that the act is unconstitutional.

The legislation which created this and other Taxing Districts in this State, was a novel experiment, and grave doubt was entertained both as to its constitutionality and effect. Upon full consideration and elaborate argument, a majority of the court held the act to be constitutional, and that its effect was to organize the people and territory of the district into a municipal corporation, having the usual legislative, executive and judicial power conferred upon such corporations. One of the novelties of these new organizations was the taking away from them of all power of local taxation, the right to levy the necessary taxes for carrying on the municipal government being expressly reserved by the Legislature to itself. This reservation was also held to be constitutional and valid. The act provides that the fire and police commissioners, created by it, should exercise supervision over the paving and repairs of streets, the construction of drains and sewers and other sanitary works, bridges, wharves, etc. The taxes levied by the act were directed to be collected by the county trustee, and paid out for the purposes, specified upon the joint warrant

of two of the commissioners. It was further provided that: "In no case shall the fund collected for one purpose be used for any other, nor shall said commissioners issue any warrants unless the money is in the hands of the trustee at the time to redeem them, under penalty of being personally liable for the amount, recoverable by the holder of the warrant." It is also enacted: "That said commissioners shall not issue any bonds, notes, scrip, or other evidences of indebtedness, and shall in no event contract for work, or material, or services in excess of the amount of tax levied for such work, material or service for that year; and parties contracting with said commissioners for work, material or services, shall look alone to the tax for that purpose for the year, and no subsequent tax shall be levied to meet the deficit; and no property, real or personal, held by said commissioners for public use, shall ever be subject to execution, or attachment, or seizure under any legal process, for any debt created by said commissioners, and all taxes due, or moneys in the hands of the county trustee, or on deposit, shall be exempt from seizure under attachment, execution, garnishment or other legal process; nor shall said commissioners or the county trustee be liable to garnishment."

The Taxing District act made so many innovations on the usual provisions of municipal charters, that the Legislature manifestly had doubts as to whether it created a municipal corporation, or interfered with the control of the county over the streets therein as public roads. For this reason, no doubt, the nineteenth

section of the act was passed, which is in these words: "That the counties in which Taxing Districts are situated shall not be liable for damages, or injuries to persons or property by reason of defects in the streets or alleys, or other property under the control and within said Taxing Districts, or for the conduct of those managing the affairs of such districts; nor shall such counties be in any manner liable to pay any money on account of such Taxing Districts." After the Taxing Districts had been declared by this court to be municipal corporations, and by the act of 1881, chapter 96, which amended the Taxing District act in several particulars, the original exemption just quoted in favor of the counties was extended to "the Taxing Districts themselves." In other words, section nineteen of the original act was amended so as to read: "That the counties in which the Taxing Districts are situated, and the Taxing Districts themselves, shall not be liable," etc. It is upon this provision that the defendant relies in this case. In terms it does clearly exempt the defendant from liability for the injury sued for, which grows out of a defect in the street.

The contention of the plaintiff is, that the act is in violation of the Constitution, Article 1, section 17, which provides: "That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the State in such manner and in such courts as the Leg-

islature may, by law, direct." It will be noticed on the face of this section of the Constitution, that, notwithstanding the generality of the language touching a man's remedy for an injury to his person, reputation or property, yet there is a class of injuries for which there is no remedy unless the Legislature shall so direct by law, namely, injuries inflicted by the State. Until the Legislature chose to legislate on the subject there was no redress in the courts: *Williams* v. *The Register*, Cooke, 214. And the redress or remedy thus given might be repealed at any time: *State* v. *The Bank of Tennessee*, 3 Bax., 395. A Constitution, moreover, must be understood and construed in the light and by the assistance of the common law, and with the fact in view that its rules are still left in force. The Constitution is not the beginning of law for the State, but it assumes the existence of a well understood system, which is to remain in force and be administered, under such limitations and restrictions as that instrument imposes: Cooley Const. Lim., 74; *People* v. *Draper*, 15 N. Y., 537; *Pope* v. *Phifer*, 3 Heis., 682. By the common law, the citizen had no remedy against a county for an injury caused by the neglect of the county to keep the public roads in good repair. And such is the state of the law to this day, although the county is a municipal corporation: *Wood* v. *Tipton County*, 7 Bax., 112; *White's Creek Turnpike Company* v. *Davidson County*, 14 Lea, 73. The reason is, that the county, in its municipal capacity, is only an arm or instrument of the State to carry out its sovereign prerogative in opening and

keeping up public roads, and the Legislature may give it only such powers as it deems best, and limit its liabilities accordingly. Originally, the State alone could levy taxes for the county: *Marr* v. *Enloe*, 1 Yer., 452. And although the Constitution now authorizes the Legislature to delegate to counties and incorporated towns the power to tax for county or corporation purposes, the Legislature may refuse to delegate it, and reserve to itself the exclusive right: *Luherman* v. *Taxing District*, 2 Lea, 425.

The current of authority, while recognizing the exemption of counties from liability for injuries caused by failing to keep the public roads in repair, nevertheless holds an incorporated town liable for a similar injury occasioned by neglect of its public streets. The reason of the distinction is, that municipal corporations of this class, while still arms of the State government, are more complete entities, and are enjoined and given the power to maintain the streets in a safe condition. But, in addition, says Mr. Dillon, " the duty or burden must appear, upon a fair view of the charter or statutes, to be imposed, or rest upon the municipal corporation, as such, and not upon it as an agency of the State, or upon its officers as independent public officers ": Dillon on Mun. Corp., sec. 789. If, in fact, the municipal corporation stands, in relation to its streets, in the situation of a county as to its public roads, the liability for neglect of duty would be the same. In the case before us, the municipality exercises supervision over the paving and repairs of streets and the construction of bridges, and has power

to enter into all necessary contracts for the work, but "subject to the limitations and restrictions" of the Taxing District act. Some of these restrictions we have seen, under which if, as the declaration alleges, "ample taxes for the purpose" have been levied by the Legislature and placed in the control of the Taxing District, there may be no funds on hand to justify any contract. The power to tax for any purpose is expressly withheld from the corporation. It is clothed with less power in the matter of taxation than the county. And if a sufferer from a defect in the streets can only look to the Legislature for redress, a suit against the corporation would be unwarranted. The corporation is in reality only an agency of the State in the matter of its streets, and an essential element of liability is wanting.

It is next insisted that the act under consideration is obnoxious to the provision of the Constitution, Article 11, section 8, which forbids the Legislature "to pass any law granting to any individual or individuals rights, privileges, immunities or exemptions other than such as may be, by the same law, extended to any member of the community who may be able to bring himself within the provisions of such law." But the cases cited by the learned counsel, in his argument in support of this contention, are cases of partial laws, which were held to be violative of Article 1, section 8 of the Constitution. And it is very true that a provision of a municipal charter, which undertakes to make a law for, or in regard to, that municipality different from the general law, or to withdraw from

the operation of a general law, applicable to all municipal corporations, a particular corporation, or class of such corporations, would be obnoxious to the clause of the Constitution last cited, because not the law of the land: *Mayor of Alexandria* v. *Dearmon,* 2 Sneed, 104; *Hatcher* v. *State,* 12 Lea, 368. But the particular franchises or rights granted to municipal corporations have never been held to fall within the prohibitions of Article 11, section 8. For such franchises are extended to any member of the community who may become a member of the corporation. And, besides, such a construction of that provision of the Constitution would deprive the Legislature of the power to make exceptional provisions for particular municipalities, or classes of municipalities. There is no statute or other law making all municipal corporations liable for neglect of its streets, but only a *consensus* of decision that such corporations possessing certain powers should be liable. The simple question there is, whether the Legislature can so limit the rights and privileges of an incorporated town or city in the matter of local taxation as to leave it in the category of a county, and thereby make it an agency of the State in the matter of its public streets, and not in that respect a complete municipal corporation, in the ordinary meaning of those words. But we have already held that the Legislature might, constitutionally, reserve to itself the power of levying the taxes of this corporation. And it is very clear that the corporation is so restricted in the use of the proceeds of the special taxes, assessed by the Legislature, and so to-

tally deprived of the power of taxation to meet any liability for injuries, as to show a plain legislative intent that the corporation shall not be liable.

The exceptions to the report of the Referees will be sustained, and the judgment below affirmed.